IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEONNE NEW-HOWARD and EDGAR HOWARD, :
                                     :
                        Plaintiffs,  :    CIVIL ACTION
                                     :
     v.                              :    NO. 11-cv-2855
                                     :
JP MORGAN CHASE BANK N.A.,           :
                                     :
                        Defendant.   :
                                     :

**MEMORANDUM AND ORDER**

**JOYNER, J.**                          **NOVEMBER 18, 2013**

     Before the Court are Defendant's Motion for Summary Judgment
(Doc. No. 24), which was renewed by Order of the Court as to the
Woolston Avenue loan only (Doc. No. 51), and Plaintiffs' Response
letter to the Court dated October 29, 2013 (Doc. No. 52). For the
reasons outlined herein, the Court GRANTS in part and DENIES in
part Defendant's motion.

**II.  BACKGROUND**

     The *pro se* Plaintiffs, Deonne R. New-Howard and Edgar A.
Howard, bring an action against JP Morgan Chase Bank, N.A., for
violation of the Pennsylvania Fair Credit Extension Uniformity
Act ("FCEUA"), 73 Pa. Stat. Ann. § 2270.1 *et seq*, the
Pennsylvania Unfair Trade Practices and Consumer Protection Law
("UTPCPL"), 23 Pa. Stat. Ann. § 201-1 *et seq.*, and the federal
Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et
seq.* The present action was filed on January 11, 2011 in the

1

Court of Common Pleas, Philadelphia County, and was then removed to this Court in April 2011. (Doc. No. 1).

The facts relevant to the instant motion are as follows. On January 31, 1985, Plaintiff Deonne New and her mother Josie New entered into a mortgage agreement (the "Woolston loan" or "the loan") with Clarion Mortgage Company in which Plaintiff undertook to pay, in monthly installments to Clarion Mortgage, $22,000 plus 13.125% annual interest. (Def. Mot. For Summary Judgment at Ex. A ("Def. Ex. A"); Aff. Of Silvia Juarez at ¶ 4 ("Juarez Aff.")). On the same day, Plaintiff was granted the deed to the property located at 6856 Woolston Avenue, Philadelphia, PA, in exchange for $21,000. (Affidavit of Sheila Raftery Wiggins at ¶ 10 ("Wiggins Aff."); Def. Ex. 9). The loan was then assigned to the Department of Housing and Development ("HUD"). (Def. Ex. A). On February 23, 1996, the loan was assigned from HUD to EMC Mortgage Corporation ("EMC") (Aff. of Sylvia Juarez at ¶ 5; Def. Ex. B), and in March of that year, the Woolston loan was modified to be a fixed rate mortgage of 7.5% annual interest. (Def. Ex. C). The unpaid principal balance on the loan at the time was $33,891.95, and Plaintiff's monthly payments were $279.85. Id. On May 30, 2008, JP Morgan Chase Bank, N.A. ("JPM") acquired EMC. (Juarez Aff. at ¶ 2). At that time, JPM began servicing the Woolston loan Id. at ¶ 7.

On August 15, 2008, Plaintiffs wrote a letter to EMC asking

them to "begin escrowing for [her] homeowner's insurance." (Def. Ex. D). The Defendant understands this as a request to escrow funds for the hazard insurance required under the terms of the mortgage. (Def. Mot. for Summary Judgment at 5). On August 18, 2008, Plaintiffs made a payment to EMC of $393.15. (Amended Complaint, Doc. No. 10, at Ex. D at 9). EMC wrote to Plaintiffs on September 16, stating that Plaintiffs' insurance policy with AllState had lapsed on March 6, 2008, due to nonpayment. (Def. Ex. D). EMC further informed Plaintiffs as follows:

> According to the terms of your loan agreement, it is your responsibility to provide the lender with proof of insurance at each renewal period. In the event you fail to provide evidence of insurance, a lender may obtain coverage to protect its interest in case of damage to the property. Because [EMC] did not receive your insurance renewal for the 2008-2009 policy periods, EMC will secure force-placed coverage on this property . . . Effective with the October 2008 installment your new monthly payment is $667.18 . . . As a reminder, your loan is past due for the September 2008 installment in the amount of $393.16.

Id. Also on September 16, 2008, EMC sent Plaintiffs a statement that listed the "past due amount" on Plaintiffs' account as $393.16, and the "current amount due" as $393.16. (Am. Compl. at ¶ 23, Ex. E). It assessed $27.63 in late fees. Id. The statement noted that a further late charge of $13.81 would be assessed if Plaintiffs did not pay the amount due by September 16, the same day on which the statement had been issued. Id. It

calculated Plaintiffs' total amount due as $813.94.[1] Id. The statement listed the "Year-To-Date Hazard Insurance Paid" as $0.00. (Am. Compl. at Ex. E). On September 23 and November 3, 2008, Plaintiffs made payments to EMC of $406.96. (Am. Compl. at Ex. D at 8-9).

On November 14, 2008, Plaintiffs received a statement from EMC that listed the "past due amount" as $0.00, the "current amount due" as $393.16, and assessed two months' worth of late fees, for a total of $420.79. (Am. Compl. at Ex. F). The late charges were assessed at $13.81 per month. Id. The statement listed the "Year-To-Date Hazard Insurance Paid" as $1,231.00. Id. Plaintiff paid EMC $393.16 on November 14, 2008. (Am. Compl. at Ex. D at 8).

On December 16, 2008, Plaintiffs received a statement listing the "past due amount" as $393.16, the "current amount due" as $659.36, and assessed $41.44 in late charges, for a total of $1,103.96. (Am. Compl. at Ex. G). The late charges were assessed at $24.86 per month. Id. The statement noted that a late charge would be assessed if Plaintiff did not pay the amount due by December 16, the same day on which the statement had been issued. Id. The statement listed the "Hazard Insurance Paid" as $1,231.00. Id.

---

[1] Plaintiffs argue that this total is incorrect, and should have been $800.13.

4

Plaintiff and Defendant then engaged in negotiations regarding a repayment plan. Defendant asserts that Plaintiff "[made] up some payments via some repayment plans" (Def. Mot. for Summary Judgment at 6), while Plaintiffs catalogue various phone calls with EMC representatives beginning in December of 2008. According to Plaintiff,[2] on December 18, 2008, Plaintiff called EMC and spoke with a representative who informed her that her new mortgage payment as of January 2009 would be $468.00 (Am. Compl. at ¶ 35; Def. Ex. 2 at 107), after which Plaintiff paid EMC $468.00 on January 28, 2009. (Am. Compl. at Ex. D at 8). Also in January 2009, EMC called Plaintiff and advised her to make no payments because EMC was in the process of making a new ninety-day payment plan under which, beginning in March 2009, Plaintiff would pay $669.36 per month (Am. Compl. at ¶ 37-38; Def. Ex. 2 at 107). Plaintiff made no payments between January 28, 2009, and March 2, 2009. (Am. Compl. at Ex. D at 8).

In February and March 2009, Plaintiff received letters informing her that she was in default on the Woolston loan. (Def. Ex. HH, II, KK). A notice at the bottom of each letter stated

---

[2] Defendant's Exhibit 2 contains Plaintiff Deonne New-Howard's responses to JPM's discovery requests. (Wiggins Aff. at ¶ 3). Included in Exhibit 2 are dated, handwritten notes which appear to document the substance of phone calls between Plaintiff and specific EMC representatives over a course of years. Because the Court may consider evidence that, if presented in appropriate form, would be admissible at trial, ERBE Electromedizin GmbH v. Canady Technology LLC, 529 F.Supp.2d 577, 586-87 (W.D. Pa. 2007)(citing J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3rd Cir. 1990)), the Court takes into account these handwritten notes in its summary judgment analysis. JPM does not in its submissions address the contents of these notes, or dispute that these phone calls occurred.

that "EMC is writing regarding the collection of your loan; any information obtained may be used for that purpose." Id.

Plaintiff made payments of $669.36 to EMC from March to July, 2009, though her May payment was only $468. (Am. Compl. at Ex. D at 7-8; Def. Ex. LL). On August 17, Plaintiff called EMC and was informed that EMC wished to make another 90-day repayment plan, and that Plaintiff should not make payments in August or September of 2009. (Am. Compl. at ¶ 44; Def. Ex. 2 at 107). Plaintiff made no payments in August or September 2009. (Am. Compl. at Ex. D at 5-6). Plaintiff engaged in phone calls with EMC representatives in August and September regarding the paperwork necessary for the modification. (Def. Ex. 2 at 107-108). On September 18, 2009, Plaintiff and EMC entered into a written agreement under which Plaintiff would pay $536.00 monthly. (Am. Compl. at Ex. B). The agreement stated that "[t]his account is due for May 01, 2009, through September 01, 2009 mortgage payments and fees." Id. It listed the past amount due as $3,223.57. Id. When Plaintiff called EMC, an EMC representative instructed her to sign and fax to EMC the written agreement if she accepted its terms. (Am. Compl. at ¶ 56-57; Def. Ex. 2 at 108). Plaintiff did so. Id.

From October 2009 to August 2010, Plaintiff made monthly payments of $536.00 or $551.68, (Am. Compl. at Ex. D at 2-5) and spoke regularly with EMC representatives who confirmed receipt of

certain payments, and also informed her that her modification was under review with the underwriter. (Def Ex. 2 at 108-110). In November 2009 and February 2010, Plaintiff applied for loan modifications. (Juarez Aff. at ¶ 10; Def. Ex. E). She cited her and her husband's lost income and her mother's diagnosis of cancer, among other things, as the reasons for the requested modification. <u>Id</u>. Plaintiff wrote, "[t]he reason I have become delinquent with my mortgage payment is because of excessive recent hardships over the past few years." <u>Id</u>.

On August 18, 2010, EMC wrote to Plaintiff that she was ineligible for a modification, citing that EMC was "unable to verify that you do live in the Property as your primary residence." (Def. Ex. F). JPM based its conclusion on the fact that Plaintiffs use 1411 E. Cliveden Street, Philadelphia, PA as their primary address (Def. Mot. For Summary Judgment at 7; Am. Compl. at ¶ 5), and have done so since at least March 2008. (Def. Mot. for Summary Judgment at Ex. H). One of the disclaimers at the bottom of the letter read, "EMC Mortgage Corporation is attempting to collect a debt, and any information obtained will be used for that purpose." (Def. Ex. F).

On September 18, 2010, Plaintiff called EMC and was informed that she was 8 months past due on her mortgage, and that her house was in foreclosure. (Am. Compl. at ¶ 69; Def. Ex. 2 at 110). In telephone discussions with EMC representatives in

October and December 2010, Plaintiff was informed that she had missed 8 payments, but that EMC could not tell her which 8 payments she had missed. (Am. Complaint at ¶ 71-72; Def. Ex. 2 at 110-111). One EMC representative informed Plaintiff that her computer system only allowed the representative to see Plaintiff's payments for the previous year, that it was Plaintiff's duty to pay the mortgage, and that Plaintiff was "playing a game" with EMC. (Am. Compl. at ¶ 72; Def. Ex. 2 at 111). The EMC payment system did not accept Plaintiffs' attempted payments in October, November, and December of 2010. (Am. Compl. ¶ 88; Def. Ex. 2 at 112-113).

On April 1, 2011, EMC Mortgage Corporation became a limited liability company - EMC Mortgage LLC. (Def. Mot. For Summary Judgment at 5 n.2). That same day, JPMorgan Chase Bank, N.A., acquired the assets of EMC Mortgage LLC in a merger. Id. For purposes of this action, JPM is a successor in interest to EMC Mortgage LLC, formerly known as EMC Mortgage Corporation. Id.

Further discussions about repayment plans and/or loan modifications continued into 2011, 2012, and 2013. (Am. Compl. at ¶¶ 88-90; Def. Ex. 2 at 112-113; Statement Letters to Plaintiffs from Defendant, Doc. Nos. 29, 35, 41, 47, 49, 53). Beginning in 2012 or earlier, Plaintiffs began to receive written communications from Chase, not EMC. The statements from Chase contain at the bottom a disclaimer stating, "We are a debt

collector." <u>See</u>, <u>e.g.</u>, (Pl. Letter Resp. To Def. Mot. For Summary Judgment at Ex B; Statement Letters to Plaintiffs from Defendant, Doc. Nos. 41, 43, 53). Plaintiffs' current payment due on the Woolston loan is the payment that was due on April 1, 2010. (Juarez Aff. at ¶ 9).

## III. **STANDARD OF REVIEW**

Upon considering a motion for summary judgment, the Court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(alteration in original)(internal quotation marks omitted). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001)(alteration in original)(internal quotation marks omitted).

If the Court does not grant or deny a summary judgment motion in full, "it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

**IV. DISCUSSION**

The Court will first review the Plaintiffs' state-law claims under the Pennsylvania Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law. The Court will then review the Plaintiff's federal claim based on the Fair Debt Collection Practices Act.

**A. PA Fair Credit Extension Uniformity Act (FCEUA)**

Plaintiff's claim under the FCEUA fails because the Woolston loan is a purchase money mortgage. The FCEUA prohibits "unfair or deceptive acts or practices with regard to the collection of debts." 73 Pa. Stat. Ann. § 2270.2. "Debt" is defined by the law as "[a]n actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money, arising . . . as a result of a purchase" but does not include money owed "as a result of a loan secured by a purchase money mortgage on real estate." Id. at § 2270.3. See also Rubenstein v. Dovenmuehle Mortg., Inc., 2009 WL 3467769 at *5 (E.D. Pa. 2009). The statute does not define a purchase money mortgage. However, some Pennsylvania courts have looked for a definition to Pennsylvania's Lien Priority Law, which defines a purchase-money

mortgage as one "taken by a mortgagee other than the seller to secure the repayment of money actually advanced by such person or on behalf of the mortgagor at the time the mortgagor acquired title to the property and used by the mortgagor at that time to pay all or part of the purchase price . . . ." 42 Pa. Con. Stat. Ann. § 8141(1)(i),(ii). See Glover v. Udran, No. 08-990, 2010 WL 5829248 at *5-6 (W.D. Pa. 2010); see also Trunzo v. Citi Mortg., 876 F.Supp. 2d 521, 539 (W.D. Pa. 2012).

Defendant has attached Plaintiffs' mortgage to its Memorandum. (Def. Ex. A). Because its authenticity is uncontested, the Court may consider it for purposes of this motion. On January 31, 1985, Plaintiff Deonne New signed a Note for a loan with Clarion Mortgage Company. Id. The Note states that, "[s]imultaneously with the execution of the Note the Maker has executed and delivered to the Payee a Mortgage secured upon certain premises," id., which are described in the Mortgage as being located at 6856 North Woolston Avenue. Id. On the same day, the deed to 6856 North Woolston Avenue was granted, in exchange for $21,000, to Josie New and Plaintiff Deonne New-Howard. (Wiggins Aff. at ¶ 10; Def. Ex. 9).

As these documents suggest, Clarion Mortgage Company obtained a mortgage on the Woolston property to secure the repayment of funds advanced to Plaintiff. On the same day, Plaintiff used these funds to purchase the property. Plaintiffs

do not argue that the Woolston loan was not a purchase money mortgage or provide any evidence to the contrary. Because purchase money mortgages are explicitly excluded by the reach of the FCEUA, the Court grants summary judgment to Defendant on Plaintiffs' FCEUA claim.

**B.    PA Unfair Trade Practices and Consumer Protection Law**

The UTPCPL prohibits unfair or deceptive acts or practices in the conduct of trade or commerce. <u>See</u> 23 Pa. Stat. Ann. § 201-3. Courts should construe the statute liberally, "to effectuate the legislative goal of consumer protection." <u>Com. v. Parisi</u>, 873 A.2d 3, 9 (Pa. Cmwlth 2005); <u>see</u> <u>also</u> <u>In re Barker</u>, 251 B.R. 250, 261 (Bankr. E.D. Pa. 2000). Specific acts prohibited under the UTPCPL include "[c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another," 23 Pa. Stat. Ann. § 201-2(4)(iii), "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made," <u>id</u>. at § 201-2(4)(xiv), and, under the catchall provision, "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." <u>Id</u>. at § 201-2(4)(xxi).

First, Defendant argues, and the Court agrees, that Plaintiffs have not presented evidence suggesting that JPM caused

a likelihood of confusion as to affiliation, connection, or association with another. Thus, summary judgment is granted in favor of Defendant on Plaintiffs' claim under 73 Pa. Stat. Ann. § 201-2(4)(iii).

Second, Defendant avers that Plaintiffs "fail to set forth any information regarding the issuance of a written guarantee or warranty" by JPM, or JPM's breach of the terms of any such guarantee. (Def. Mot. For Summary Judgment at 16-17). While Plaintiffs allege the breach of a three-month repayment plan to cure any delinquency in payment regarding a loan between Plaintiffs and JPM for a property located at 5900 Addison Avenue (Am. Compl. at ¶ 110; Def. Ex. 3 at 142) they have not alleged the existence or breach of a similar written guarantee with regard to the Woolston loan. Thus, summary judgment is granted to Defendant on Plaintiff's claim under 73 Pa. Stat. Ann. § 201-2(4)(xiv).

Third, Defendant states that Plaintiffs have no claim under § 201-2(4)(xxi), the "catchall provision" of the UTPCPL. The Third Circuit and Pennsylvania state courts have noted that "Pennsylvania law regarding the standard of liability under the UTPCPL catchall is 'in flux.'" <u>Belmont v. MB Inv. Partners, Inc.</u>, 708 F.3d 470, 498 (3d Cir. 2013)(citing <u>Fazio v. Guardian Life Ins. Co.</u>, 62 A.3d 396, 407 (Pa. Sup. Ct. 2012)). While some courts require a plaintiff proceeding under this provision to

prove the elements of common-law fraud, others have held that a plaintiff may prove either deception or common-law fraud. Id. at n.32, n.33 (collecting cases). Common-law fraud under Pennsylvania law requires (1) a misrepresentation (2) material to the transaction (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable reliance as a result, and (6) injury proximately caused by the reliance. Levine v. First American Title Ins. Co., 682 F.Supp.2d 442, 467 (E.D. Pa. 2010)(citing Santana Products, Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005)). Even if proving deceptive conduct requires a less strict burden of proof than does fraud, the Third Circuit has concluded that deception nonetheless requires "knowledge of the falsity of one's statements or the misleading quality of one's conduct." Id.

Defendant argues that Plaintiffs fail to plead a violation of the catchall provision "beyond their formulaic recitation" of the statute. (Def. Motion for Summary Judgment at 17). However, viewing the facts in the light most favorable to the *pro se* Plaintiffs and drawing all reasonable inferences in their favor, Plaintiffs do complain of specific actions taken by Defendant[3]

---

[3] Defendants argue that the monthly payments and late charges on the Billing Statements issued to Plaintiffs do add up, that the Payment Summary section properly presents all charges, and that Plaintiffs' loan modification was properly denied in 2010 on the basis that the Woolston property was not Plaintiffs' residence. (Def. Mot. For Summary Judgment at 23-24). However, Plaintiffs also present other allegations, listed above, which are not rebutted by Defendant.

which Plaintiffs believe to be fraudulent or deceptive. For example, the following allegations go beyond "mere recitations" of the UTPCPL elements: that EMC sent a November 14, 2008 notice listing the "current amount due" as $393.16 (Am. Compl. at Ex. F) after informing Plaintiff that the new monthly payment was $667.18 as of October 2008 (Def. Ex. D); that EMC assessed late fees on the same day as it issued two statements (Am. Compl. at Exs. E, G); that EMC increased the rate of late fees without explanation, <u>compare</u> (Am. Compl. Ex. E) <u>with</u> (Am. Compl. Ex. G); that EMC representatives told Plaintiff to refrain from making payments while approval of repayment plans was pending, (Def. Ex. 2 at 107); and EMC representatives were unable to explain which payments Plaintiff had missed after stating the loan was in default. <u>Id</u>. at 110-111.

Defendant further argues that Plaintiffs' claim under the catchall provision should be dismissed because Plaintiffs fail to plead any ascertainable loss of money or property as a result of JPM's actions. (Def. Motion for Summary Judgment at 14). Defendant avers that the Amended Complaint does not allege that Plaintiff lost any money or property and Plaintiff Deonne New-Howard's deposition[4] claims only emotional suffering and negative impact on her credit history. <u>Id</u>. A viable claim under the UTPCPL requires an "ascertainable loss" of monetary or property. <u>See</u>

_____

[4] The deposition is not part of the record provided to the Court.

_Wenrich v. Robert E. Cole, P.C._, CIV. A. 00-2588, 2001 WL 4994 at
*6 (E.D. Pa. 2000); see also _Nelson v. First Card_, 2998 WL 107236
at *2 (E.D. Pa. 1998)("[t]he damages must be out-of-pocket
losses, as recovery for emotional distress is not permitted under
the UTPCPL.").

The Court finds that Plaintiffs have alleged and produced
evidence sufficient for a juror to find that they suffered
monetary loss. Plaintiffs' Amended Complaint alleges that
"Defendant's . . . practices resulted in Plaintiff being three
(3) months behind in her mortgage." (Am. Compl. at ¶ 43).
Plaintiffs further answered to an interrogatory that Plaintiffs
"have sustained actual damages including . . . out-of-pocket
expenses . . . and pecuniary loss." (Def. Ex. 2 at 66). Moreover,
Plaintiffs have presented evidence that they were assessed late
fees on the same day that statements were issued, received and
complied with instructions by EMC employees not to make certain
monthly payments, and received a statement representing a
"current amount due" that was in conflict with a previously
issued notice. Viewing the evidence and drawing all reasonable
inferences in the light most favorable to Plaintiffs, the Court
finds that a juror could believe that some of Defendants' actions
caused Plaintiffs to pay unnecessary fees and fall behind on
certain payments or make incorrect payments, thus incurring
additional costs or accruing an increased amount due under the

mortgage. All of these are the type of out-of-pocket monetary losses sufficient to sustain a claim under the UPTCPL. See, e.g., Cave v. Saxon Mortg. Services, Inc., CIV.A. 11-4586, 2013 WL 460082 at *2 (E.D. Pa. 2013)(Plaintiffs' allegations that they "are required to pay increased interest, will suffer longer loan payoff times, face higher principal balances, and are burdened with unaffordable mortgage payments" properly allege ascertainable loss under the UTPCPL). The Court will not grant summary judgment on Plaintiff's claim under § 201-2(4)(xxi) of the UTPCPL.

## C.    **Federal Fair Debt Collection Practices Act**

Summary judgment is proper on Plaintiffs' FDCPA claim because JPM did not act as a "debt collector" within the meaning of the Act. The FDCPA prohibits a "debt collector" from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The law's definition of "debt collector" includes an entity "the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. at § 1692a(6).

Creditors are generally not subject to the reach of the FDCPA, which excludes "any officer or employee of a creditor, while, in the name of the creditor, collecting debts for such

creditor," id. at § 1692a(6)(A); see also Police v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000). Courts have held that mortgage lenders and mortgage servicing companies are not debt collectors when they attempt to collect their own debts. See, e.g., McAndrew v. Deutsche Bank Nat. Trust Co., 3:13 CV 1926, 2013 WL 5551453 at *7 (M.D. Pa. 2013)("[a] loan servicer . . . cannot be a "debt collector" under the FDCPA unless the debt was in default when it was obtained by the servicer."); Oates v. Wells Fargo Bank, N.A., 880 F.Supp.2d 620, 626 (E.D. Pa. 2012); Duraney v. Washington Mut. Bank F.A., 2008 WL 4204821 at *12 (W.D. Pa. 2008); Oldroyd v. Associates Consumer Discount Company/PA, 863 F.Supp. 237, 241-2 (E.D. Pa. 1994). If an existing debt is assigned, the assignee of the obligation is not a "debt collector" if the obligation is not in default at the time of the assignment; but if the obligation is in default when assigned, the assignee may be a "debt collector." Police, 225 F.3d at 403-04.

However, the Act does reach "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. at § 1692a(6). This "false name exception" prohibits creditors from pretending to be someone else or using a pseudonym or alias. See Berk v. J.P. Morgan Chase Bank, N.A., 2011 WL 4467746 at *3-4 (E.D. Pa. 2011). It does not

prevent a creditor from using the name of one of its divisions or subsidiaries, if the same name is always used when dealing with a particular consumer. See Berk, 2011 WL 4467746 at *3-4 (citing Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 235 (2d Cir. 1988)("Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the name under which it usually transacts business . . . or any name that it has used from the inception of the credit relation.")(internal citations omitted); Federal Trade Commission Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,107, 1988 WL 269068 (Dec. 13, 1988)).

In short, the FDCPA reaches businesses whose principal purpose is the collection of debts or who regularly engage in the collection of debts, and contains an exclusion for creditors who attempt to collect their own debts. Oppong v. First Union Mortg. Corp., 215 Fed. Appx. 114, 118 (3d Cir. 2007); Staub v. Harris, 626 F.2d 275, 277 (3d Cir. 1980). Yet the FDCPA does include in its reach entities who have acquired debts that were already in default, Oppong, 215 Fed. Appx at 118, or creditors who use pseudonyms or aliases in the collection of debts. Berk, 2011 WL 4467746 at *3-4.

As the owner and servicer of Plaintiffs' loan, JPM was not a debt collector under the statute. There is no evidence by either

party as to whether JPM's "principal purpose" is to collect debts, or how regularly it does so. However, Defendant JPM argues that it is not a "debt collector" under the Act because "at all applicable times, JPM was attempting to collect a debt JPM serviced before it went into default," (Def. Mot. For Summary Judgment at 20), such that the creditor exception in § 1692a(6)(A) applies. EMC became the owner and servicer of the Woolston loan in 1996. On May 30, 2008, JPM acquired EMC and has been servicing the loan since that time. Plaintiff was first notified she was in default in February 2009, after JPM had acquired EMC and become the owner of the loan. Thus, during the relevant time period JPM was the type of mortgage lender collecting a debt owed to itself that courts have found to be exempt from the reaches of the FDCPA.

The "false name exception" of the FDCPA is also inapplicable. Since 1996, Plaintiffs have received modifications, notices and statements from EMC Mortgage Corp., which was attempting to collect a debt owed to EMC itself. See (Def. Ex. D, F, HH). The EMC name continued to be used in oral and written communications with Plaintiffs even after EMC was acquired by JPM in 2008. Id. Plaintiffs have not presented any evidence to the contrary, and do not allege that they were under the false impression that a third party was collecting the debt on behalf of the loan's owner. See Berk, 2011 WL 4467746 at *3-4. Thus,

JPM's actions would not indicate to a consumer "that a third person is attempting to collect" the debt.

Lastly, the fact that JPM has included in its communications with Plaintiffs the "mini-Miranda" disclaimers required of debt collectors does not change the Court's analysis. 15 U.S.C. § 1692e(11) requires debt collectors to disclose in any initial communication with a debtor that the debt collector is collecting a debt and that any information obtained will be used for that purpose, a disclaimer often called a "mini-Miranda" warning. See, e.g., Simon v. FIA Card Services, N.A., 732 F.3d 259, 264-65 (3d Cir. 2013). However, the fact of disclosure by EMC and JPM does not mean that EMC or JPM meet the definition of debt collector under the FDCPA, and it does not change the fact that, at all relevant times, Defendant was attempting to collect a debt owed to itself.

On this basis, the Court concludes that JPM was not a "debt collector" under the FDCPA, and grants summary judgment to Defendant on this claim.